**Jerry YOUNG, a/k/a Ramadan, Plaintiff,**

**v.**

**J. KIHL and Thomas A. Coughlin, III, Defendants.**

**No. CIV–88–900E.**

United States District Court, W.D. New York.

Sept. 22, 1989.

Jerry Young, pro se.

Alithea E. Lango, Asst. State Atty. Gen., Buffalo, N.Y., for defendants.

### MEMORANDUM AND ORDER

ELFVIN, District Judge.

This is a *pro se* civil rights action brought under 42 U.S.C. § 1983 by an inmate confined within New York's corrections system. The plaintiff complains that he was punished for alleged misbehavior by defendant Kihl following disciplinary hearings at which the plaintiff was denied the opportunity to be present during the examination of witnesses on his behalf. Defendant Coughlin, the Commissioner of New York's Department of Corrections, allegedly affirmed the disciplinary sentences upon administrative appeal. *See* Complaint; Amended Complaint; Affidavit of Jerry Young (sworn to September 30, 1988).

The defendants have separately moved to dismiss the Amended Complaint, each asserting that the plaintiff's pleadings fail to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. rule 12(b)(6). Coughlin also argues that the pleadings lack necessary allegations as to his personal involvement in or other knowledge of the purportedly unconstitutional conduct.

A section 1983 complaint must allege such involvement or such knowledge. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Personal involvement of a supervisory official may, however, include a failure to remedy the wrong after having learned of such—*Williams v. Smith, supra*, at 323; *e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir.1975)—, with the caveat that the wrong must have been ongoing or otherwise have been capable of mitigation at the time the supervisory official was apprised thereof. *Parker v. Coughlin*, CIV–88–529E, ——— WL ——— (W.D.N.Y., December 10, 1988) (unpublished opinion). Without such caveat, the personal involvement doctrine may effectively and improperly be transformed into one of *respondeat superior. Ibid.*

In this case, the Complaint alleges that Coughlin affirmed the sentence imposed at the disciplinary hearing. It does not expressly state that the appeal to him made reference to the alleged wrongdoing at such hearing and that Coughlin thereby had knowledge of the same. However, in his affidavit opposing the motion to dismiss the plaintiff asserts that Coughlin "has sanction [sic], ratified, condoned, [and] participated in the action that caused the violation."

Inasmuch as *pro se* filings must be evaluated according to less stringent standards than those of attorneys—*see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*per curiam* )—and in light of the liberality with which amended pleadings must be entertained "when justice so requires"—*see* Fed.R. Civ.P. rule 15(a)—the plaintiff's affidavit will be construed as a supplemental pleading. The terms sanctioned, ratified, and condoned implicitly contain an allegation of Coughlin's knowledge of the purported misconduct by Kihl and expressly assert Coughlin's failure to remedy the same. Upon learning of the misconduct, Coughlin could have removed or mitigated its injurious effect by vacating the sentence imposed upon the plaintiff at the disciplinary hearing. The serving of the sentence imposed at the hearing—and the loss of liberty such occasioned—was a necessary element of any due process violation, and Coughlin's alleged failure to vacate the sentence upon appeal operated to further any such violation. Accordingly, the pleadings suffice to implicate Coughlin personally in any wrongdoing.

The remaining question is whether the plaintiff's allegations state a claim for which relief may be granted under section 1983. Of course, in answering such question this Court must confine its consid-

eration to the plaintiff's pleadings—Fed.R. Civ.P. rule 12(b)—and draw all reasonable inferences in his favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The United States Supreme Court addressed the procedural rights of an inmate facing disciplinary proceedings in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therein it was stated, *inter alia*, that such an inmate

"should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents." *Id.*, at 566–567 [94 S.Ct. at 2979].

Thereby the Court established a qualified right of an inmate to call witnesses on his behalf at a disciplinary hearing against him. But in the same decision the Court specifically declined to require prison officials to allow the confrontation and cross-examination of adverse witnesses, reasoning that otherwise prison disciplinary proceedings would become unduly drawn out and difficult to manage. *Id.*, at 567–569, 94 S.Ct. at 2980–81.

In this Court's view, the above quoted language of *Wolff v. McDonnell*, according inmates a qualified right to call witnesses, should be controlling in this case. True, the plaintiff herein does not allege that he has been denied altogether the opportunity to introduce testimony of certain favorable witnesses. Rather, he has invoked the right to be physically present during the examination of these witnesses. Yet such a right follows logically from the right to call witnesses on one's behalf.

Moreover, an inmate's mere presence during the introduction of *favorable* testimony poses none of the inherent "dangers" which has led the United States Supreme Court to refuse to accord inmates a right (qualified or otherwise) to be present during *adverse* testimony. The Court's concerns about confrontation and cross-examination relate to the "considerable potential for havoc inside the prison walls," *id.*, at 567, 94 S.Ct. at 2980, "since the disclosure of the identity of [an unknown] accuser, and the cross-examination which will follow may pose a high risk of *reprisal* within the institution. * * * Although the dangers

posed by cross-examination of known inmate accusers may be less, the *resentment* which may persist after confrontation may still be substantial." *Id.*, at 568–569, 94 S.Ct. at 2980–81 [emphasis added]. These concerns about resentment and reprisal potentially undermining institutional security are not implicated by an inmate's presence during *favorable* testimony. Hence, although the highest court did not directly comment in *Wolff v. McDonnell* upon the right of an inmate to be present during the testimony of favorable witnesses at his disciplinary proceeding, it makes sense that the enjoyment of such right should be permitted provided that, within the language of that decision, "do[ing] so will not be unduly hazardous to institutional safety or correctional goals."[1] *Id.*, at 566, 94 S.Ct. at 2979.

Given that the plaintiff has seized upon a legitimate constitutional claim, it must be ascertained whether all necessary elements of such claim have been pled. It is not alleged that the defendants' refusal to permit the plaintiff to be present during the examination of exculpatory witnesses was had without regard for institutional safety or correctional goals. But, the plaintiff's pleadings are not defective therefor.

In *Wolff v. McDonnell, supra,* the Court declined to "prescribe" that prison officials state their reasons for refusing to call a witness—*id.,* 418 U.S. at 566—94 S.Ct. at 2979, thereby arguably imposing the burden upon an inmate plaintiff to establish an invalid reason for such refusal. *See Hurney v. Carver,* 602 F.2d 993, 995 (1st Cir. 1979) (so construing *Wolff v. McDonnell*); *see also Thomas v. Estelle,* 603 F.2d 488, 490, *reh. en banc denied,* 606 F.2d 321 (5th Cir.1979) (complaint deficient which lacks

"specific allegations" that a refusal to call exculpatory witnesses was "arbitrary, capricious or an abuse of discretion"). The United States Supreme Court has since clarified its position somewhat. In *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), it stated that

"prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but * * * they may do so either by making the explanation part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing or they may choose to explain it later." *Id.,* at 497, 105 S.Ct. at 2196.

The Court specifically disclaimed a position "which would in effect place the burden of proof on the inmate to show why the action of prison officials in refusing to call witnesses was arbitrary or capricious." *Id.,* at 499, 105 S.Ct. at 2197. The burden instead logically belongs with a defendant prison official because a prison's security needs and correctional goals "are almost by definition not available to the inmate." *Ibid.; see also Hurney v. Carver, supra,* at 996 (Bownes J., dissenting) (imposition of the burden on the inmate plaintiff unfairly "requires that the plaintiff prove a negative in a setting that, by its nature, severely limits his access to the facts"). Thus, the existence of a valid reason for the refusal to allow an inmate to call witnesses or to be present during their testimony should be conceived of as an affirmative defense, consideration of which may not be had on a rule 12(b)(6) motion.[2]

---

1. There is sweeping language in *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.), *cert. denied,* ── U.S. ──, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987), which would appear to suggest that an inmate does not have a right to be present during the testimony of any witness, whether favorable or not, *viz.:*

"To the extent [the defendant] took testimony from witnesses out of [the inmate's] presence, he did not violate any due process requirement. *See Baxter v. Palmigiano,* 425 U.S. 308, 322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976)."

However, there is no indication anywhere in *Bolden v. Alston* that the inmate sought to be present during the examination of favorable witnesses. And *Baxter v. Palmigiano,* which is cited as authority for such broad proposition, specifically speaks only of confronting and cross-examining witnesses testifying *against* the inmate. Thus, *Bolden v. Alston* is inapposite.

2. The defendants have each attached a written reason for the denial, which apparently the plaintiff received at the time. However, in light

Accordingly, it is hereby ORDERED that the defendants' respective motions to dismiss are denied.

of the foregoing discussion, this Court is of the view that an evaluation of such must await a

motion for summary judgment.