Kevin **RICHARDSON**, Plaintiff,

v.

Thomas A. **COUGHLIN**, III, Commissioner, State Department of Correctional Services, Donald Selsky, Coordinator, Inmate Discipline, Wayne Wilhelm, Lieutenant Block, Attica Correctional Facility, Defendants.

No. 87 Civ. 5263 (MGC).

United States District Court, S.D. New York.

April 22, 1991.

Prisoners' Legal Services of New York by Ken Stephens, Deborah Schneer, David C. Leven, Poughkeepsie, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. by Judy Nathan, New York City, for defendants.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff, an inmate in the New York State prison system, sues defendants under 42 U.S.C. § 1983, claiming that they violated his due process and First Amendment rights by seizing papers, including a petition, from his cell and punishing him under prison disciplinary rules for circulating the petition. Plaintiff has moved for partial summary judgment, and defendants have cross-moved for summary judgment.

## PARTIES

Plaintiff Kevin Richardson was incarcerated at Attica Correctional Facility ("Attica") when the challenged disciplinary charges were lodged against him, and was incarcerated at Sullivan Correctional Facility ("Sullivan") during the disciplinary hearing at which the challenged punishment was imposed. (Complaint, ¶ 5.)

Defendant Thomas A. Coughlin III is the Commissioner of the New York State Department of Correctional Services ("DOCS"). (JPTO, ¶ 3.)[1] Defendant Donald Selsky is and was during the events complained of the Director of Inmate Discipline for DOCS. (JPTO, ¶ 5.) He is legally responsible for the administrative review of determinations made at prisoners' disciplinary hearings, known as Superintendent's Hearings. (Complaint, ¶ 8.) Defendant

---

1. References to undisputed facts in the Joint Pretrial Order are indicated by (JPTO, ¶ —.).

Wayne Wilhelm was a Captain at Sullivan in May, 1987 and was the hearing officer for the Superintendent's Hearing at which the punishment that Richardson challenges was imposed. (Complaint, ¶ 10; JPTO, ¶ 7.) Defendant John Block, a Lieutenant at Attica in May of 1987, authorized the seizure of Richardson's petition from his cell and the bringing of disciplinary charges for circulating it. (JPTO, ¶ 10.)

## UNDISPUTED FACTS

In early April of 1987 Richardson was transferred to Attica from Auburn Correctional Facility. (JPTO, ¶ 11.) Attica is a maximum security correctional facility. (JPTO, ¶ 12.) On or about May 5, 1987, Officers Nappo and Bea, two Attica correction officers, searched Richardson's cell in his absence. (JPTO, ¶ 15–17.) The search was authorized by defendant Block. (JPTO, ¶ 18.)

During this search, Officers Nappo and Bea seized some written materials from Richardson's cell. These materials included: a copy of a *New York Times* article headlined, "US Court Finds for Prisoner in Rights Case;" an unfinished letter to a journalist, Tony Farina; a paper containing handwritten notes; and a letter addressed to Richardson as the Powerful Shaktir Richardson. (JPTO, ¶ 20.) Also among these materials was a handwritten document written and signed by Richardson and also signed by nine other inmates ("the petition"). (JPTO, ¶ 20.) The petition states:

To Whom it May Concern:

Attica, [t]he word means resistance, rebellion, courage and solidarity. In 1971 2000 prisoners took the prison over and held it for over a week to demand that they be treated "as men and not beast." The Attica Rebellion told the world about the conditions that prisoners faced at Attica. Thirty-nine people were murdered by New York State and hundreds were savagely beaten. In 1976 1700 of 2200 prisoners called a general strike to protest inhuman conditions, the administration broke the strike by transferring over a hundred prisoners keeping hundreds locked in their cells. Today the situation in Attica Prison is unchanged in fact it is even wors[e]. The prison's response to demands for basic human rights has been to increase repression in the name of "security" and to insure this the officers go around and beat up on prisoners for no reason at all. The number of guards has doubled since 1971. Racist guards, many believed to be Ku Klux Klans harass beat and threaten the lives of prisoners daily. Attica is in very high tension right now as the officers continue to push, press, and beat up prisoners. A Block is the worst of all as if it's the police strong[hold], A–7 Company is like a reception company no one on this gallery goes to chow. Everyone is fed up in their cells, the food is filthy and goes through 10 hands before it is given to us, always cold. And most of the time everything is not there. I Kevin Richardson the writer of this was sent back to Attica on 4–7–87 and placed on A–7 Company. I am not keylock yet I've never been to the mess hall I've been fed keylock meals. In 1983 a correction officer handed the Black Book (a book about Black history). Inside prisoners' names were handwritten onto pictures of lynched Black men and African tribesmen. My name (Whip) was written over one of the lynched men. Yet I'm back in Attica again.

Prisoners here on A–7 Company face the most inhumane and degrading conditions that one could think of. Here is a list of the things that we are faced with each and every day

1) Cold food and short rations of meals.

2) Forced to live in filthy cells—The[re] is no cell clean up on A–7.

3) People have seen C.O.'s playing with the mail bag!!

4) Constant verbal harassment and threats and abuse.

5) The C.O.'s take anybod[y's] rec, showers and phone calls at will.

6) Everybody must take the blanket off the bed and go get their property and drag their property in their blanket on the floor.

7) Assaults are very common in A Block and regular.

8) Unjustified disciplinary reports against prisoners.

9) Keylocks are burned for their rec at will and regular.

10) The attitude of the C.O.'s is very barbaric.

People who have [encountered] the above

(Plaintiff's Ex. 3.)

Beneath the last line, the petition has spaces numbered one to sixteen. Richardson had signed in the first space, and nine other inmates had signed in spaces two through ten. (*Id.*)

Officer Bea gave the seized written materials, including the petition, to defendant Block. (JPTO, ¶ 21.) Officers Bea and Nappo prepared a cell search slip dated May 5, 1987 that indicated that a belt, a buckle, and a pair of gloves had been taken from Richardson's cell. (JPTO, ¶ 22.) On May 7, Officer Bea wrote another slip that listed a belt, buckle, gloves, and six pieces of paperwork as having been taken on May 5. (JPTO, ¶ 24.)

Defendant Block ordered Officer Nappo to write an Inmate Misbehavior Report charging Richardson with violating DOCS Standards of Inmate Behavior, Rules 104.-12 and 100.20. (JPTO, ¶ 26.) Rule 104.12 provides that "inmates shall not lead, organize, participate or urge other inmates to participate in sit-ins, lock-ins or other actions which may be detrimental to the order of the facility." 7 N.Y.Comp.Codes R. & Regs. § 270.1(b)(1)(v). Rule 100.20 provides that "inmates shall not engage in conduct which disturbs the order of the facility." 7 *Id.* § 270.1(b)(5)(iii). Officer Nappo wrote out a misbehavior report on May 6, and Richardson received it on or about the same day. (Plaintiff's Ex. 6; JPTO, ¶ 27–28.) Under the heading "Rule Violation(s)," it listed Rules 100.20 and 104.12 and under the heading "Description of Incident," Officer Nappo wrote:

On Tues. May 5 1987 at approx: 2:00 pm I Officer F. Nappo along with Officer J. Bea were directed per orders of Lt. Block due to probable cause of weapons or contraband in the cell of inmate Richard-son 80A3080 to frisk his cell on 32 Company. While frisking his property we observed various articles of paper that had other inmates names and numbers. After taking a closer look at these papers, it was determined that they were beginnings of petitions and other materials used in organizing groups to assemble and create a disturbance. That inmate Richardson was encouraging fellow inmates to take a stand with him to accomplish their fight back against this facility. The articles were confiscated and turned in to Lt. Block to be reviewed.

(Plaintiff's Ex. 6.)

It is undisputed that defendants had no rule that required an inmate to obtain approval from a DOCS official before collecting signatures from other inmates. (Plaintiff's Rule 3(g) Statement, ¶ 2.) Richardson had previously collected the signatures of four other inmates on a letter he had sent to Senator Daniel Patrick Moynihan in January of 1983, a copy of which had been sent to defendant Coughlin. Richardson had not sought prior approval for collecting those signatures, nor had he been disciplined for collecting them or for sending the letter. (*Id.* at ¶¶ 3–4.) It is also uncontested that there was no organized or mass inmate disturbance at Attica for a reasonable time on or after May 5, 1987. (JPTO, ¶ 19.)

As a result of Officer Nappo's misbehavior report, Richardson was placed in "keeplock" status on May 6, 1987. (JPTO, ¶ 29.) He was transferred from Attica to Sullivan on May 9, 1987. (JPTO, ¶ 30.) A Superintendent's Hearing concerning the charges in the misbehavior report was held at Sullivan on May 11, 12, 14 and 18, 1987. (JPTO, ¶ 34.) Defendant Wilhelm was the hearing officer. (JPTO, ¶ 33–34.) Richardson testified at the hearing, as did Officers Nappo and Bea. (JPTO, ¶ 38–39.) Richardson also requested that the eight inmates who had signed his petition be called as witnesses. (JPTO, ¶ 37.) Of those inmates, five testified at the hearing, and two of the three who did not testify signed

statements concerning the petition. (JPTO, ¶ 40–42.)

On May 18, 1987, Wilhelm rendered a disposition and penalty. (JPTO, ¶ 43.) Wilhelm ordered a penalty of 180 days in the Special Housing Unit (SHU), 180 days loss of telephone, package and commissary privileges, and six months loss of good time. (JPTO, ¶ 44.) In the "Superintendent's Hearing Disposition Rendered" form, Wilhelm wrote under "Reasons for disposition, penalty imposed:"

1) The disposition is to demonstrate to Richardson & the inmate population at large the acquisition of signatures without the expressed authorization of departmental officials is prohibited. The document in question named as a petition is inflammatory in nature & appears to advocate insurrection by inmates.

2) Disciplinary record of Richardson which demonstrates a continued inability to comply with the standards of inmate behavior all institutions.

3) Inmate has been advised that this disposition does not indicate that he cannot as an individual file complaints through recognized channels, e.g., ICC, IGRC, correspondence to Supt., PLS, commissioner, etc.

(Plaintiff's Ex. 7.)

Richardson appealed the disposition by a letter dated May 18, 1987. (JPTO, ¶ 46.) Defendant Selsky, who was responsible for responding to appeals of Superintendents' Hearings, affirmed the disposition on July 23, 1987. (JPTO, ¶ 48–49.)

Richardson was transferred from Sullivan to Great Meadow Correctional Facility in July of 1987. (JPTO, ¶ 52.) On or about September 18, 1987, Selsky modified the disposition of Richardson's hearing to the time already served in the Special Housing Unit, and restored Richardson's lost good time. (JPTO, ¶ 55.) Selsky states the reason for modifying the penalty in a September 21, 1987 memorandum to Superintendent Jones of Great Meadow, as "nature of misbehavior does not appear to warrant 6 months SHU and loss of good time." (Plaintiff's Ex. 11; JPTO, ¶ 56.) Richardson was released to the general prison population after having served about 130 days in SHU. (JPTO, ¶ 58.)

## THE COMPLAINT

Richardson brings this action under 42 U.S.C. § 1983. He modified his amended complaint, filed February 23, 1988, by a Supplement to the Joint Pretrial Order, filed in April of 1990, and by stipulations withdrawing pendent state law claims and dismissing nine of the original defendants. Richardson's amended complaint, as modified by the Supplement to the Joint Pretrial Order, alleges that his First Amendment rights were violated by the confiscation of his written materials, by the lodging of disciplinary charges against him and by his punishment based on those materials. Richardson also claims that he was deprived of liberty without due process of law in violation of the Fourteenth Amendment because Rules 100.20 and 104.12 did not provide him with prior notice that he could be punished for writing or circulating the petition or, in the alternative, that he was found guilty of the charges without evidence that he had violated the rules under which he was charged.

Richardson seeks compensatory damages for the time he was held in SHU and for distress caused by his transfer from Sullivan following his sentence, punitive damages, a declaration that defendants violated his constitutional rights, and costs and attorney's fees. He also seeks, as injunctive relief, that all references to the charges and Superintendent's Hearing be expunged from his records, that he be transferred back to Sullivan, and that enforcement of Rules 100.20 and 104.12 be suspended until they are rewritten and submitted to this court for approval.

## DISCUSSION

### I. *Plaintiff's Motion for Partial Summary Judgment*

Richardson has moved for partial summary judgment on his claim that defendants deprived him of due process of law by (1) failing to provide him with adequate notice of speech and conduct prohibited un-

der Rules 100.20 and 104.12, and (2) charging him, finding him guilty and punishing him without having provided adequate prior notice that he could be punished for writing the petition and having other inmates sign it. Richardson also seeks summary judgment on his claim for a declaration that Rules 100.20 and 104.12 are unconstitutionally vague as applied to him and for an order expunging the charges from his records.

■ A motion for summary judgment shall be granted if the court "determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). The test for granting a summary judgment motion parallels the standard for a directed verdict. If the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party, then there is a genuine factual dispute and summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Blum v. Koch,* 716 F.Supp. 754, 757 (S.D.N.Y.1989).

■ Defendants do not contest that inmates have a protected liberty interest in remaining in the general prison population. *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir. 1984). Rather, they argue that Richardson's claim fails as a matter of law, that defendant Coughlin was not personally involved in the disciplinary proceedings, that defendant Block was not responsible for the punishment imposed on Richardson, and that all defendants are entitled to qualified immunity from liability for damages. Defendants do not dispute any fact material to Richardson's claim.

Richardson relies on *Adams v. Gunnell,* 729 F.2d 362 (5th Cir.1984) and *Rios v. Lane,* 812 F.2d 1032 (7th Cir.), *cert. dismissed,* 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987). In *Adams,* a petition signed by 36 federal prisoners at the Federal Correctional Institute in Texarkana, Texas was sent to the warden of the prison, the Texarkana Gazette, and the ACLU. The petition alleged that black inmates were denied opportunities to participate in certain programs and proposed "avenues and strategies" to solve the problem. 729 F.2d at 364. The defendants in *Adams* characterized the petition as "gentle." *Id.* Two inmates who had signed the petition, Adams and Dancy, were charged with violating Prison Rule 399, which prohibited "conduct which disrupts the orderly running of the Institution." *Id.* After hearings before the institution disciplinary committee (IDC), Adams and Dancy were found to have violated Rule 399. *Id.* The only "specific evidence relied upon" in Dancy's IDC Report was Dancy's "admission and supportive evidence ([his] signature on the petition)." *Id.* at 365. Adams' IDC report cited as "specific evidence" the following: "You admit to signing the petition and supporting the contents of the petition." *Id.* Both Dancy and Adams were sentenced to loss of 30 days statutory good time, 15 days of administrative segregation, and recommendation of a disciplinary transfer, and Adams was removed from "mandatory goodtime." *Id.*

Adams and Dancy brought an action alleging that punishing them for signing a petition violated their First Amendment rights and that punishing them for conduct they could not have known was prohibited violated their right to due process of law. *Id.* The Fifth Circuit reversed the district court's dismissal of the due process claim, holding that "basic due process was violated by the eventual imposition of severe punishment for conduct no inmate could have known was against prison rules." *Id.* at 370. The court noted that nothing gave the plaintiffs "reason to suspect that writing, signing, or even circulating a petition among the inmates ... would subject them to punishment." *Id.* at 369.

In *Rios v. Lane,* 812 F.2d 1032, the Seventh Circuit followed the due process analysis in *Adams.* Rios, a prisoner, gave a card containing schedules of broadcasts from the FMLN (an El Salvador revolutionary organization) and political slogans

about Central America and Puerto Rico to an inmate who belonged to FALN, a group whose members threatened prison security "because of their avowed use of violent and illegal means." *Id.* at 1037. Rios testified at his disciplinary hearing that he had copied the broadcast schedules from a newspaper that had been approved by the prison. *Id.* at 1035. Rios was found to have violated Rule 205, which barred "engaging or pressuring others to engage in gang activities or meetings, displaying, wearing or using gang insignia, or giving gang signals." *Id.* at 1034.

Rios brought suit alleging denial of his rights to free speech and due process. The district court granted defendants' motion for summary judgment. The Seventh Circuit reversed, holding that Rule 205, as applied to Rios, failed to give adequate notice of prohibited conduct and was thus unconstitutionally vague. *Id.* at 1037–39. The court found that due process imposed a "continuing requirement that inmates be free to steer away from prohibited conduct, unentangled by the trappings of poorly delineated prison regulations." *Id.* at 1039.

Both *Adams* and *Rios* support Richardson's claim that he was denied due process of law. One of the basic components of due process of law is notice of what is prohibited. *Grayned v. Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Richardson was punished for an activity that he had no notice was prohibited. It is undisputed that defendant Wilhelm stated in his hearing disposition that "the disposition is to demonstrate to Richardson & the inmate population at large that the acquisition of signatures without the expressed authorization of departmental officials is prohibited." (Plaintiff's Ex. 7.) However, no prison rule prohibited acquiring signatures or circulating petitions without the express authorization of departmental officials. Although defendants now argue that Richardson was punished only because the language of his petition can be read to advocate a strike, the hearing disposition form expressly states that a reason for the punishment was to show that unauthorized acquisition of signatures is prohibited.

Wilhelm's statements in Richardson's disciplinary hearing confirm that Richardson was punished at least in part for circulating a petition. When Richardson stated that he had asked other inmates to sign the petition to verify his complaints, Wilhelm replied: "That's why you have your rights to access to the courts. That's why you've got the grievance mechanism. That's why you've got the ILC mechanism. You don't have the right to circulate petitions." (Hearing Transcript at 29.) Later in the hearing, Wilhelm stated, "writing up a document and then ten inmates signing that document demanding change in conditions, that's not in compliance with departmental regulations." (Hearing Transcript at 37.) Since Richardson was not on notice that acquiring signatures on a petition reciting grievances was prohibited, punishing him for doing so violates due process.

■ Defendants have raised a genuine issue of disputed fact as to whether the language of the petition was also a reason for disciplining Richardson, and part of his punishment may have been attributable to defendants' belief that the petition advocated a strike. However, to the extent that part of Richardson's punishment was based on his violation of a non-existent rule against petitions, defendants deprived him of due process of law. Defendants have not submitted any evidence that the non-existent rule played no part in Richardson's punishment. Therefore, Richardson is entitled to partial summary judgment on his due process claim.

## II. *Defendants' Cross–Motion for Summary Judgment*

Defendants have moved for summary judgment dismissing the complaint. Defendants argue that all defendants enjoy qualified immunity from damages, that sufficient evidence supports the Superintendents' Hearing disposition, that neither disciplining Richardson for circulating his petition nor removing his papers from his cell violated his First Amendment rights, that defendants Coughlin and Block were not personally involved in the discipline com-

plained of, and that defendant Wilhelm is not liable for damages arising from Richardson's transfer from Sullivan to Great Meadow. I address these issues in turn.

### Qualified Immunity

■ Defendants argue that even if the punishment violated Richardson's constitutional rights, they nonetheless enjoy qualified immunity from damages. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Defeating a claim of qualified immunity, however, does not require "that the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). But in order to defeat a claim of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The Second Circuit states the test for qualified immunity as follows: "[I]f it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct." *Natale v. Town of Ridgefield*, 927 F.2d 101, 104–105 (2d Cir.1991).

By 1987, it was clearly established that inmates possessed a constitutional right to due process, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and that due process required prior notice that conduct was prohibited before sanctions could be imposed. *Grayned v. Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Connally v. General Constr. Corp.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). It should have been obvious to Wilhelm that the first reason he gave for Richardson's punishment, that circulation of a petition without permission was itself prohibited, violated the constitutional notice requirement because that conduct was not prohibited by any prison rule.

But defendant Wilhelm went on to state: "The document in question named as a petition is inflammatory & appears to advocate insurrection by inmates." Thus, the language of the petition may have led defendants reasonably to believe that Rule 104.12 gave adequate notice that circulation of the language in that particular petition was prohibited. The petition, unlike the one at issue in *Adams*, was not "gentle," and a conscientious correction officer could reasonably have been concerned about its import. Defendants have raised a genuine issue of material fact with respect to whether part of Richardson's punishment was based on defendants' reasonable belief that the petition advocated a strike and therefore violated Rule 104.12's prohibition on leading, organizing or urging others to participate in sit-ins or lock-ins.

To what extent, if at all, the disciplinary penalty resulted from the language of the petition and to what extent from the mistaken belief that all petitions were prohibited cannot be determined on summary judgment. Thus whether and to what extent defendants are entitled to some qualified immunity from damages must await trial.

### Insufficient Evidence

■ Defendants Wilhelm and Selsky move for summary judgment on Richardson's claim against them that the guilty disposition denied him due process because there was insufficient evidence in the record to support a finding that he violated the rules charged. Richardson characterizes this claim as an alternative way of alleging that the evidence at his hearing did not match the rules that he was found to have violated. In his Supplement to the Pre-Trial Order, Richardson characterizes this claim as an "alternative basis for recovering damages and not a claim for any additional compensatory damages." (Supp. to JPTO at 7–8.) Because Richardson's motion for partial summary judgment on his claim of a due process violation is granted,

it is unnecessary to address this alternative theory of recovery.

### First Amendment

1. Punishment for Circulating the Petition

■ Defendants have also moved for summary judgment on plaintiff's claim that punishing him for circulating the petition violated his First Amendment rights. Whether or not the First Amendment prohibited defendants from punishing Richardson for circulating the petition, the punishment did not "violate clearly established ... rights of which a reasonable person would have known" in 1987 and defendants are thus immune from damages on this claim. Richardson has not cited any case that held, as of May of 1987, the First Amendment barred prison officials from regulating the circulation through the prison of a petition with language such as Richardson's. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus petitioner has not shown a violation of a clearly established right and defendants have qualified immunity from damages on the First Amendment claim.

2. Removal of Papers

■ Defendant Block seeks summary judgment on Richardson's claim against him that the removal and retention of Richardson's documents, other than the petition for which he was disciplined, from his cell violated his First Amendment rights. The other documents taken were a newspaper article, the start of a letter from Richardson to a journalist, handwritten notes, and a letter to "the Powerful Shaktir Richardson." The transcript of Richardson's hearing and the Superintendent's Hearing Disposition Rendered form show that these documents were not the basis for his punishment.

Defendants argue that this seizure during a lawful search raises no First Amendment issue. In opposing summary judgment on this claim, Richardson argues that the seizure chilled his First Amendment rights and that it cannot meet the reasonableness test of *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), which requires prison rules that impinge on inmates' constitutional rights to be reasonably related to legitimate penological interests. *Id.* at 89, 107 S.Ct. at 2261. Richardson has cited no support for his contention that the removal of non-legal papers from a prison cell violates the First Amendment.[2] The failure to return the papers to him may constitute negligence, but negligence does not rise to the level of a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Therefore, summary judgment for defendant Block on this claim is granted.

### Lack of Personal Involvement of Defendant Coughlin

Defendant Coughlin seeks summary judgment on all claims against him on the ground that Richardson has shown no personal involvement by him. Richardson contends that Coughlin is liable for ratifying and adopting the punishment without ascertaining whether Richardson's rights had been violated and for failing to promulgate more specific rules.

■ Richardson has not raised a material issue of fact with respect to any personal involvement in his punishment by defendant Coughlin. Liability under 42 U.S.C. § 1983 requires that the defendant be personally involved in a constitutional deprivation. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). A plaintiff can show the required personal involvement of a supervisor such as Coughlin by showing that the supervisor 1) directly participated; 2) failed to remedy the wrong after learning of it through a report or appeal; 3) created

---

**2.** *Morello v. James,* 810 F.2d 344 (2d Cir.1987), cited by Richardson in the Joint Pretrial Order,

involved an inmate's right of access to the courts.

or continued a policy or custom under which unconstitutional practices occurred; or 4) was grossly negligent in managing the subordinates who caused the violation. *Al–Jundi v. Estate of Rockefeller*, 885 F.2d at 1066; *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

 Richardson alleges that Coughlin "ratified and adopted" his punishment. (Plaintiff's Supplement to JPTO.) In support, Richardson offers only the failure of Coughlin to deny, in his answer, the allegation in the amended complaint that "in refusing to reverse the Superintendent's Hearing, ... Coughlin ratified and adopted the disposition against and punishment of the plaintiff challenged herein." (Complaint, ¶ 97.) Richardson, however, has offered no evidence that the hearing disposition was appealed to Coughlin or that Coughlin was even aware of the disposition. The cases cited by Richardson in support of Coughlin's personal involvement are cases in which Coughlin himself affirmed a disciplinary hearing. *See Patterson v. Coughlin*, 905 F.2d 564, 568 (2d Cir.1990); *Young v. Kihl*, 720 F.Supp. 22, 23 (W.D.N.Y.1989).

Nor does the fact that Coughlin received and responded to a letter from Richardson complaining about conditions in Attica show involvement by Coughlin in the punishment. Richardson wrote to Coughlin before the events at issue here occurred, and Coughlin's response addresses Richardson's complaints and request for a transfer, not his disciplinary hearing. Richardson also does not allege that Coughlin received any report concerning the disciplinary hearing on which he failed to act or that he reviewed or affirmed the discipline.

 Finally, Richardson points to the New York Correction Law § 138(6) (McKinney's 1987) requirement that the Commissioner review annually all rules and regulations pertaining to inmates and the New York Correction Law § 138(3) requirement that all such rules be "specific and precise." Richardson argues that Coughlin is liable under § 1983 for failing a duty imposed upon him by state law, thereby creating a policy under which unconstitutional

practices occurred. The fact that state law requires Coughlin to review all prison rules, however, is not evidence that Rules 100.20 or 104.12 constituted an improper custom or policy and does not support liability of Coughlin under § 1983 for an instance of their improper application.

### *Lack of Personal Involvement of Defendant Block*

Defendant Block moves for summary judgment on Richardson's claim that he is liable for the punishment eventually imposed because he directed Officer Nappo to write out a misbehavior report charging Richardson with violating Rules 100.20 and 104.12. Richardson argues that Block knew or should have known that those charges violated the First Amendment and that the rules did not give adequate notice that Richardson could be punished for circulating the petition.

 The filing of wrongful or even false charges against an inmate is not a constitutional violation, as long as the inmate is accorded a hearing in connection with the charges. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986), *reh'g en banc denied*, 826 F.2d 194 (2d Cir.1987), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). The one exception is that the filing of false disciplinary charges in retaliation for an inmate's exercise of his substantive constitutional rights may support a § 1983 claim. *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.1988); *Anderson v. Sullivan*, 702 F.Supp. 424, 427 (S.D.N.Y.1988).

 Richardson's claim against defendant Block does not fall within the narrow "retaliation" exception created by *Franco*. Richardson does not allege that Block intentionally caused a false misbehavior report to be issued. In *Franco*, by contrast, the plaintiff claimed that "prison officials intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison." *Franco*, 854 F.2d at 589. Here, Richardson does not dispute that he

possessed the petition and other papers described in the misbehavior report. Whether or not his possession of them was protected by the First Amendment, Block's misbehavior report did not constitute either an intentionally false charge or "retaliation" of the kind found actionable in *Franco*. Thus, Block's motion for summary judgment on Richardson's § 1983 claim against him for directing Officer Nappo to write the misbehavior report is granted.

### Claim for Damages for Transfer from Sullivan

 Finally, defendant Wilhelm has moved for summary judgment dismissing Richardson's claim against him for damages for the distress caused Richardson by his transfer from Sullivan to Great Meadow in July of 1987.[3] Because Richardson has raised a genuine issue of material fact as to whether his transfer from Sullivan resulted from the disposition at his hearing, summary judgment for defendant Wilhelm on this claim must be denied.

### CONCLUSION

Richardson's motion for partial summary judgment on the issue of lack of notice is granted against defendants Wilhelm and Selsky to the extent that they are directed to expunge the disciplinary charges and disposition from his records. Defendants' cross-motion for summary judgment is granted with respect to the First Amendment claims and denied with respect to the due process claims because there is a genuine issue of material fact as to whether Wilhelm and Selsky are entitled to qualified immunity from liability for all damages claimed against them, and the complaint is dismissed against defendants Coughlin and Block.

Plaintiff's remaining requests for relief, suspension of enforcement of Rule 104.12 and transfer back to Sullivan, have not been addressed by either side on these motions.

SO ORDERED.

---

**3.** Richardson also asks that as part of his injunctive relief, defendant Coughlin be ordered to transfer him back to Sullivan Correctional Facility or to another facility agreed to by Richardson. (Complaint, ¶ 103(f); Plaintiff's Supplement to JPTO, ¶ 8(c).) Defendants do not seek summary judgment on this demand for injunctive relief.