**Duaut A. DUAMUTEF, Plaintiff–Appellant,**

**v.**

**John O'KEEFE, Superintendent, Gouverneur Correctional Facility; Thomas Skipper; B. Huckeba, Defendants–Appellees.**

**No. 234, Docket 96–2238.**

United States Court of Appeals,
Second Circuit.

Submitted Sept. 19, 1996.

Decided Oct. 18, 1996.

Duaut A. Duamutef, Alden, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary and Martin A. Hotvet, Assistant Attorneys General, Albany, NY, for Defendants–Appellees.

Before: MESKILL, WINTER, and CABRANES, Circuit Judges.

WINTER, Circuit Judge:

Duaut Duamutef, *pro se, in forma pauperis,* and incarcerated, appeals from Judge McAvoy's grant of summary judgment in favor of New York corrections officials Superintendent John O'Keefe, Lieutenant Thomas Skipper, and Hearing Officer Brian Huckeba, all of the Gouverneur Correctional Facility.

Duamutef's complaint alleged that his constitutional rights were violated when corrections officers at the facility placed Duamutef in the "Special Housing Unit" for 51 days and suspended certain privileges in response to his having prepared a petition signed by 33 inmates asking for an improvement of prison conditions. Duamutef also asserted that Skipper threatened him with further disciplinary action and a transfer to a maximum security prison if Duamutef did not abandon the petition effort.[1] Duamutef was transferred to a maximum security prison after this action was filed, and he claims in subsequently-filed papers that the transfer was in retaliation for the petition. Appellees argue that Duamutef's confinement in the prison's Special Housing Unit was justified under prison regulations by his circulation of the petition. Defendants deny that the prison transfer was retaliatory.

Magistrate Judge David R. Homer issued a report and recommendation dated January 29, 1996, that appellees' motion for summary judgment should be granted and Duamutef's claim dismissed. Chief Judge McAvoy adopted the report, and judgment was entered dismissing the complaint on March 19, 1996. Before reaching the merits, we address whether Duamutef must comply with the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996) (amending 28 U.S.C. § 1915). If applicable, the PLRA would require dismissal of this appeal unless Duamutef submits an appropriate authorization form allowing collection of an initial partial filing fee and authorizing subsequent payments from appellant's prison account until the full fee is paid. *Leonard v. Lacy,* 88 F.3d 181 (2d Cir.1996).

---

1. Duamutef also alleged that Skipper threatened him with retaliation because of complaints Duamutef filed through the established grievance procedure. Duamutef's papers on appeal do not pursue this claim, however, and we need not address it.

The PLRA was signed by the President on April 26, 1996, but designated no effective date and contained no explicit indication as to the PLRA's application to pending appeals. We held recently that the PLRA's fee provisions did apply to appeals in which a prisoner has been granted *in forma pauperis* status by the district court, even if the notice of appeal was filed before the PLRA was signed into law. *Covino v. Reopel*, 89 F.3d 105 (2d Cir.1996). However, we noted in *Covino* that the fee provisions might not apply to cases in which the "appeal reached the stage where judicial resources had already been expended, or perhaps even if the appellant himself could demonstrate that he had expended significant time and effort by preparing an appellate brief." *Covino*, 89 F.3d at 108. Subsequently, we held that where an appeal was submitted for decision before the PLRA was enacted, the prisoner would not be required to satisfy the PLRA's fee provisions. *Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir.1996). We reasoned that requiring an appellant to comply with the PLRA under those circumstances would "not further the congressional purposes of reducing the state's burden of responding to frivolous actions or of deterring frivolous prisoner litigation." *Id.* at 73.

We hold that Duamutef need not comply with the PLRA. Duamutef filed his notice of appeal on March 19, 1996, a month before the PLRA was signed into law. Both parties filed their briefs after the PLRA was signed on April 26, 1996, but before July 16, 1996, the date on which *Covino* was decided. Therefore, Duamutef's appeal was fully briefed before either party had notice that the fee provisions of the PLRA could be applied retroactively.

In preparing and filing the briefs, both Duamutef and the appellees have expended a significant amount of time. Requiring Duamutef to comply with the PLRA fee provisions at this point would not further the congressional purposes of reducing the state's burden of defending frivolous actions. Nor would it have any effect on deterring future frivolous litigation. We therefore reach the merits.

Duamutef challenges the grant of summary judgment against him. Appellate review of a grant of summary judgment is *de novo*. *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). On appeal, Duamutef claims that he was disciplined under prison regulations for exercising his First Amendment rights by circulating among his fellow inmates a petition protesting prison conditions.

Although the act of preparing and circulating a petition implicates speech and associational rights under the First Amendment, *see Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977), those rights must be weighed against legitimate safety interests of the prison. A regulation that impinges upon an inmate's constitutional rights is valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Factors to be considered are: (i) whether there is a "valid, rational connection" between the regulation and a governmental interest; (ii) whether there are alternative means of exercising the constitutional right; (iii) whether the asserted right will have an impact on the allocation of prison resources; and (iv) whether the regulation represents an exaggerated or reasonable response to prison concerns. *Id.* at 89–90, 107 S.Ct. at 2261–62.

In the instant case, the prison regulations provide an effective procedure for inmates to communicate their grievances to prison authorities. N.Y.Comp.Codes R. & Regs. tit. 7, § 701.1 et seq. (1996). No claim is made that Duamutef's petition contains requests that could not have been processed by individual prisoners through that official grievance procedure. So long as that avenue of communication is open, we believe it permissible for prison officials to bar the circulation of petitions. Petitions necessarily involve hard-to-monitor organizational activities that might well result in concerted conduct that undermines order in the prison. Other courts have similarly found that the First Amendment interests involved in preparing and circulating petitions in prison are outweighed by the facility's safety concerns. *See, e.g., Nickens v. White*, 622 F.2d 967, 971 (8th Cir.), *cert. denied*, 449 U.S. 1018, 101

S.Ct. 581, 66 L.Ed.2d 478 (1980); *Edwards v. White,* 501 F.Supp. 8, 11–13 (M.D.Pa. 1979), *aff'd,* 633 F.2d 209, 212 (3d Cir.1980).

Duamutef argues for the first time on appeal that the regulation under which he was disciplined failed to give him adequate notice that preparing a petition was punishable conduct. Duamutef was disciplined under Rule 104.12 of the Department of Correctional Services' Standards of Inmate Behavior, which states: "Inmates shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." N.Y.Comp.Codes R. & Regs. tit. 7, § 270.2 (1996). Duamutef's due process claim finds some support in caselaw. *See Adams v. Gunnell,* 729 F.2d 362 (5th Cir.1984) (finding it permissible under First Amendment to ban petitions in prison, but remanding for determination of whether inmate's due process rights were violated for lack of notice that such activity was proscribed); *Richardson v. Coughlin,* 763 F.Supp. 1228 (S.D.N.Y. 1991) (granting partial summary judgment to inmate on claim that he was denied due process for lack of notice that acquiring signatures on petition was prohibited). However, issues raised for the first time on appeal will not be considered unless consideration of the issue is necessary to avoid manifest injustice or the issue is purely legal and requires no additional fact-finding. *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 302 (2d Cir.1996). Following this standard, we decline to rule on Duamutef's due process claim. We see no manifest injustice. The claim of lack of notice is such that, if valid, one would have expected it to have been raised immediately upon the initiation of disciplinary proceedings. Moreover, fact-finding would be necessary to resolve the question of whether Duamutef had actual notice that prison regulations, whether Rule 104.12 or some other restriction, prohibited the preparation or circulation of group petitions.

We therefore affirm.