**Eldred E. LEITZSEY, Plaintiff,**

v.

**Philip COOMBE, Jr., et al., Defendants.**

**No. 95–CV–6410L.**

United States District Court,
W.D. New York.

Feb. 23, 1998.

284

Eldred E. Leitzsey, Pine City, NY, pro se.

Mary H. Doyle, New York State Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Eddie Leitzsey, appearing *pro se,* commenced this action on August 24, 1995, pursuant to 42 U.S.C. § 1983. Plaintiff, who is currently an inmate at Southport Correctional Facility, alleges that on or about December 27, 1994, while he was incarcerated at Attica Correctional Facility ("Attica"), defendants violated his constitutional rights under the First, Fourth, and Fourteenth Amendments. The defendants, Philip Coombe, Walter Kelly, M. Giambruno, T. Dixon, Eric Urban, and Patricia Priestley, were employees or agents of the New York State Department of Correctional Services ("DOCS"). Pending before the Court is the defendant's motion for summary judgment.[1]

Plaintiff alleges that a search of his cell on December 27, 1994 by prison officials led to the discovery and seizure of a bag of his documents, the contents of which were deemed to be contraband under DOCS Standards of Inmate Behavior Rule 105.12., and destroyed after plaintiff was found guilty at a Tier II disciplinary hearing of violating the rule. Plaintiff seeks relief in the form of a declaratory judgment that Rule 105.12 violates his rights under the First and Fourteenth Amendments. He also seeks expungement from his disciplinary record of the Tier II proceedings, and compensatory and punitive damages for the confiscation and destruction of certain items in his cell at Attica. For the reasons discussed *infra,* defendants' motion for summary judgment is granted.

---

1. An Order entered November 12, 1997 set forth that all responding papers were to be filed by December 8, 1997. (Docket # 29). Leitzsey did not file a response to the motion for summary judgment.

### FACTUAL BACKGROUND

The facts, as alleged by Leitzsey, are as follows: Leitzsey was an inmate housed at Attica on December 27, 1994. On that date, at approximately 4:15 p.m., while in his cell, he was issued an Inmate Misbehavior Report, charging him with assault upon another inmate. At approximately 5:40 p.m., as a consequence of the assault charge, he was removed from his cell and taken to the Special Housing Unit ("SHU").

Defendant Correction Officer Eric Urban was directed to conduct a cell frisk of Leitzsey's cell and pack and move the inmate's possessions to SHU. During this search, defendant Urban found a bag containing, *inter alia*, documents written by plaintiff, that referred to an organization, the Black–A–Moor–Kings, or "BKKN" (standing for Black–A–Moor Kings and Queens Knights Nation), an organization that is not listed as a recognized organization by DOCS. The documents seized from Leitzsey's cell set forth specific rules and an ideology for members of the BKKN, and stated in part:

> The BKKN, is a unified organization composed of Black's [sic] (only) . . . . We are a unified nation, a revolutionary organization of African descent fighting together.
>
> . . . .
>
> WE ARE NOT LATIN KING'S [sic] (Latinos or Puerto Ricans) and, WE ARE NOT WHITE . . . . it is not befitting that a Black–A–Moor King or Queen, associate his [sic] or herself with an outsider.
>
> . . . .
>
> The question, is not how many are willing to die for the nation, [b]ut how many are willing to 'kill' for the nation, by stricking [sic] down your enemies on impulse, when, and wherever you shall see them.
>
> . . . .
>
> IF, you are a member of the BKKN, and you become a Black–a–Moor King while in jail, (prison,) . . . you are supposed to report, and make yourself known to the first corwn in that facility. You are to introduce yourselves respectfully to the Black–a–Moor Kings as soon as you arrive into

any (and all) correctional facilities wherein there is a division or family of Kings.

(Docket # 14, Exh. to Hearing Tr. of 1/8/95). This bag also contained letters, photographs, lists of addresses and phone numbers, and Leitzsey's diary. Defendant Urban determined that the entire contents of the bag were contraband, confiscated the bag, and transferred it to his supervisors.

On December 28, 1994, while housed in SHU, Leitzsey was served with a misbehavior report that charged him with a violation of DOCS Standards of Inmate Behavior Rule 105.12. That rule provides in relevant part as follows: "Inmates shall not engage . . . in unauthorized organizational activities, . . . possess . . . unauthorized organizational . . . materials. An unauthorized organization is any . . . organization which has not been approved by the Deputy Commissioner for Program Services."

On December 28, 1994, Leitzsey met with Correctional Officer R. Connors, who assisted him in the preparation of his defense to the misbehavior charges. At that time, Leitzsey requested that the contraband be present at the hearing. On January 2, 1995, Leitzsey wrote to Deputy Superintendent Donnelly, requesting to have "all unauthorized material [that was] confiscated from my personal property sent home, at the cost of my own expense."

Leitzsey appeared for the hearing before defendant Lieutenant Dixon. He was found guilty of violating Rule 105.2 and sentenced to a 30–day loss of telephone privileges. The hearing officer further directed the destruction of the items in the bag that related to the unauthorized organization. Items of a legal nature and other authorized personal belongings, to the extent that they existed, were to be returned to Leitzsey.

Leitzsey appealed the hearing officer's decision, claiming that the items in the bag did not relate to unauthorized organizational activity, but instead were legitimate documents pertaining to Black Studies research material and Afro–American culture. On January 18, 1995, defendant Michael Giambruno, First Deputy Superintendent, affirmed defendant Dixon's decision. In preparing for the appeal, Leitzsey requested the seized docu-

ments from defendant Patricia Priestley, an Inmate Records Coordinator at Attica. Leitzsey received a memorandum in response to his request from Priestley, as follows:

> I have reviewed the five pages of documents used as evidence against you. I am denying you[r] request for copies as the documents are considered contraband which you are not allowed to have.

> When your Article 78 is accepted by the Court, this office will provide the court with a copy of the entire hearing packet, including the contraband documents.

> You may appeal my decision to [the] Office of Counsel, DOCS....

In his complaint, Leitzsey claims that Rule 105.12 is unconstitutional because it violates his First Amendment rights to free speech and free exercise of religion, and violates his Fourteenth Amendment right to due process, by failing to give him adequate notice of prohibited conduct. He also claims that the search of his cell by defendant Urban violated his Fourth Amendment right to be free from unlawful searches and seizures. Leitzsey seeks damages for the destruction of his documents and other items of personal property.

## DISCUSSION

### I. First Amendment Claims

#### A. The Free Speech Claim

Leitzsey claims that Rule 105.12 violates the First Amendment by restricting his right to free speech. Specifically, he contends that while the documents in question may have been inflammatory in nature, Rule 105.12 gives prison officials unlimited license to determine the types of organizations that are authorized, and to prohibit the creation and possession of certain documents that reflect or express political beliefs. Leitzsey also claims that Rule 105.12 is unconstitutional in that it allowed defendants to confiscate and destroy political treatises that he wrote, an action that has no legitimate penological objective. Furthermore, Leitzsey claims that the defendants' application of the rule in this case was a constitutional violation.

Defendants contend in their motion for summary judgment that Rule 105.12 does not violate the First Amendment; it constitutes a valid restraint on Leitzsey's speech because it is reasonably related to legitimate penological interests.

In reviewing this First Amendment claim, we must draw all reasonable inferences in favor of Leitzsey for purposes of summary judgment. *Giano v. Senkowski*, 54 F.3d 1050, 1054 (2d Cir.1995). Plaintiff, however, still carries the burden of proving that a challenged prison regulation is unreasonable, if his action is to survive dismissal. *Id.*

Although inmates retain some of their constitutional rights during incarceration, the Supreme Court has stated that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Prison regulations restricting speech are "valid if [they are] reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In evaluating challenged regulations, courts must consider the following factors: (1) whether there is a rational connection between the regulation and a governmental interest; (2) whether there are alternative means of exercising the constitutional right; (3) whether exercising the asserted right will impact on the allocation of prison resources, and (4) whether the regulation is a reasonable response to prison concerns. *Turner v. Safley*, 482 U.S. at 89–90; *see also Duamutef v. O'Keefe*, 98 F.3d 22, 25 (2d Cir.1996).

Prison administrators must be given deference and latitude to determine the probable consequences of allowing certain speech and to take reasonable steps to prevent breaches of security and prisoner violence. *Procunier v. Martinez*, 416 U.S. 396, 404–05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Thornburgh v. Abbott*, 490 U.S. 401, 408, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In the context of the First Amendment, the Supreme Court has regularly upheld regulations that prohib-

it inmates from engaging in activities that would be permissible and protected outside of prison. *Thornburgh,* 490 U.S. at 419 (upholding regulation that limits prisoners' receipt of publications that threaten prison security). *Turner,* 482 U.S. at 78 (upholding regulations that restrict correspondence between inmates of different correctional facilities). Additionally, content-based limitations, the sole purpose of which is to maintain security and deter violence among inmates, have been sustained. *Giano,* 54 F.3d at 1054–55 (upholding regulation that prohibited inmates from possessing nude or semi-nude photographs of spouses or girlfriends).

In examining limitations on First Amendment free speech rights, this Court has previously stated, "[C]ommon sense alone requires the conclusion that a restriction preventing inmates from disrupting the operation of a prison passes constitutional muster." *Boddie v. Brunelle,* 1997 WL 626407, at *5 (W.D.N.Y. Sept.19, 1997) (holding that inmate has no constitutionally protected right to voice his complaints verbally to prison officials, outside of the grievance procedure).

The rule at issue, Rule 105.12, prevents prisoners from engaging in organizational activities or possessing organizational materials that are not authorized by the Deputy Commissioner of Correctional Services. Defendants contend that this regulation is reasonably related to the legitimate penological interest of maintaining order within the correctional facilities. In the instant case, Leitzsey's materials were properly confiscated because they related to an unauthorized organization and posed a potential disruption to order in the prison. I agree with defendants' contentions and, therefore, dismiss plaintiff's free speech claim.

First, I find that Rule 105.12 does not impermissibly infringe plaintiff's constitutional right to free speech, because the rule is reasonably related to the legitimate penological interest of maintaining prison order and security. The State's policy behind the establishment of inmate organizations provides:

"The Department of Correctional Services encourages constructive interaction between inmates and the community." DOCS Directive No. 4760, II. While prison organizations may have their own in-house origins or arise as part of a national chapter, the goals of such organizations should be:

1. To improve the attitudes and personalities of each participant and stimulate growth in understanding and responsibility.

2. To promote constructive utilization of leisure time.

3. To provide additional educational, vocational, and social experiences for inmates.

DOCS Directive No. 4760, IIB.

Prison administrators must be granted broad discretion to determine the types of inmate organizations that serve these policies and goals. Generally, a court should defer to prison administrators in making these decisions.

It is reasonable and essential for prison officials to prohibit inmate participation in and possession of materials relating to organizations that foster disorder and threaten the security of the institution. The regulation is a reasonable response to a proper security issue. *See Duamutef,* 98 F.3d at 24 (upholding restriction on inmate petitions because "[p]etitions necessarily involve hard-to-monitor organizational activities that might well result in concerted conduct that undermines order in the prison"). Thus, there is a valid and rational connection between the regulation at issue and the interest of maintaining prison order.

Leitzsey is not foreclosed from expressing his political, social, or cultural views in other ways. Rather, he is merely forbidden to engage in activities or to possess documents that refer to an unauthorized organization.[2] I find that Rule 105.12 passes constitutional muster.

Additionally, the defendants' application of Rule 105.12 by seizing the BKKN documents

---

**2.** If Leitzsey desires to obtain "authorized" status for the BKKN, he is free to apply for that status in accordance with the procedures set forth in

DOCS Directive No. 4760, Section III, by submitting a Request to Form an Inmate Organization.

in plaintiff's cell did not violate plaintiff's right of free speech. There is no dispute between the parties that the documents at issue referred to the BKKN, an organization that is not listed as authorized by the Deputy Commissioner of Correctional Services; plaintiff acknowledged the unauthorized status of this organization during his April 25, 1997 deposition. (Def.'s Mt. for SJ, Exh. A, p. 25). The documents deemed to be contraband by the defendants contained a manifesto for the BKKN, an organization that Leitzsey described as "outlawed-revolutionary." (Docket # 14, Exh. to Hearing Tr. of 1/9/95). The documents included statements that Leitzsey admitted were racist and inflammatory, (Def.'s Mt. for SJ, Exh. A, p. 28–29), and described an organizational structure that defendants construed as both gang-related and in violation of Rule 105.12.

Leitzsey filed no response to the motion for summary judgment. In earlier pleadings and at his deposition, however, he claimed that the manifesto contained only political, cultural, religious, and historical information that he shared with no one else. (Def.'s Mt. for SJ, Exh. A. at 30–34, 42). Even if Leitzsey's characterization of the documents and their use by him is true, however, his free speech claim cannot survive summary judgment. The undisputed fact remains that the BKKN was not an organization authorized by DOCS. Plaintiff did not have a constitutionally protected right to possess these documents and therefore, defendants' motion for summary judgment is granted as to the free speech claim.

## B. The Religious Exercise Claim

Leitzsey claims that Rule 105.12 violates his constitutional rights pursuant to the Free Exercise Clause of the First Amendment. Specifically, he alleges in the complaint that the regulation restricts his right to express the "religious" beliefs of the BKKN. Defendants contend in their motion for summary judgment that Leitzsey's beliefs are not religious in nature, and therefore, this Court is not required to analyze the Free Exercise claim. Specifically, defendants maintain that the BKKN is a political, rather than religious, organization.

In order to be accorded First Amendment protection under the free exercise clause, the beliefs professed must be: (1) sincerely held, and (2) religious in nature according to the claimant's own scheme of things. *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir.1984). But, even if I conclude that plaintiff's beliefs relating to the BKKN were sincere religious ones, that does not permit plaintiff to exercise his religion in any manner that he deems appropriate.

I find that Leitzsey's First Amendment rights to exercise his religion are not infringed by Rule 105.12. The standard set forth in *Turner v. Safley* applies to restrictions on religious activities as well as on other First Amendment activities.

Leitzsey's complaint contains a conclusory allegation that the defendants' confiscation of his BKKN documents pursuant to Rule 105.12 deprived him of his right to exercise his religious beliefs, by prohibiting his possession of religious materials. I find that the regulation's restriction against possession of unauthorized materials, such as the BKKN documents, however, is reasonably related to legitimate penological concerns that his possession of documents relating to an unauthorized organization posed a threat to institutional order. *See Bryan v. Administrative of F.C.I. Otisville*, 897 F.Supp. 134, 137 (S.D.N.Y.1995) (holding that prison's confiscation of inmate's personal prayer materials during his stay in the Special Housing Unit, due to security reasons, did not violate the First Amendment). Rule 105.12 does not prevent Leitzsey from seeking institutional recognition of his religious organization, and the accommodations that would result from his having obtained such status. Thus, because Rule 105.12 is a rational response to a legitimate prison concern of security, I find that it does not violate Leitzsey's rights under the Free Exercise Clause. Defendants' motion for summary judgment is granted as to the freedom of religion claim.

## II. The Substantive Due Process Claim

Plaintiff also alleges that Rule 105.12 violates his substantive due process rights

under the Fourteenth Amendment because it fails to provide him with adequate notice of the prohibited conduct. I construe this allegation as a claim that the regulation is unconstitutionally vague, but reject the claim as meritless.

Courts have recognized prisoners' substantive due process claims that allege that prison rules failed to provide adequate notice of prohibited conduct. *Rios v. Lane*, 812 F.2d 1032, 1037–39 (7th Cir.), *cert. denied, Lane v. Rios,* 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987); *Richardson v. Coughlin,* 763 F.Supp. 1228, 1235 (S.D.N.Y.1991). The underlying rationale for such holdings is that inmates must be free to avoid prohibited conduct, and prison regulations must therefore place them on notice of the actions that could subject them to discipline. *Richardson,* 763 F.Supp. at 1235.

In the instant case, however, the facts demonstrate that Leitzsey was not deprived of his substantive due process rights when he was disciplined for violating Rule 105.12. Defendants contend in their motion for summary judgment that Rule 105.12 was adopted on February 22, 1994 and that the inmates were provided with notice of its adoption. Leitzsey, having filed no response to the motion for summary judgment, does not dispute that assertion. Although the manifesto was written in 1991, Leitzsey received notice of the passage of Rule 105.12 in 1994 with sufficient time to dispose of the unauthorized materials or to seek authorized status.

It is apparent that Leitzsey had at least a minimal awareness upon writing the manifesto that such an organization was of an unauthorized nature. Leitzsey also acknowledged at his Tier II hearing that he had not taken steps to make the BKKN an authorized organization. (Docket # 14, Hearing Tr. of 1/8/95 at 7). Still further, he stated at his deposition that the BKKN was not an organization authorized by DOCS. I find Leitzsey's substantive due process claim to be without merit and grant defendants' motion for summary judgment.

### III. The Fourth Amendment Claim

Leitzsey alleges that defendant Urban's search of his cell violated his Fourth Amend-

ment right to privacy. Defendants contend in their motion for summary judgment that Leitzsey, an incarcerated person, has no expectation of a right to privacy. I find that defendants are entitled to summary judgment regarding plaintiff's cell-search claim.

The Supreme Court has held that searches of prison cells do not implicate protected constitutional rights; prisoners have no reasonable expectation of privacy within the confines of their cells. *See Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that shakedown search of inmate's cell did not violate Fourth Amendment because recognition of such a right would be irreconcilable with the concept of incarceration and the objectives of prisons). In the prison setting, a cell search is reasonable as long as it is related to legitimate security concerns. *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).

In this case, the search of Leitzsey's cell was conducted as a matter of course when his belongings were being transferred to his new cell in the SHU unit. Certainly, Leitzsey had no reasonable expectation of privacy under these circumstances and, therefore, his Fourth Amendment claim is meritless. *Hudson,* 468 U.S. at 524–26. I grant defendants' motion for summary judgment on the Fourth Amendment claim.

### IV. The Loss of Property Claim

Leitzsey alleges that his constitutional rights were violated when defendants took his bag of documents and personal items and later destroyed it.

I find that Leitzsey's loss-of-property claim fails to rise to the level of a constitutional claim. This is because a claim for the loss of property does not lie in federal court if the state courts offer an adequate remedy for such a deprivation. *Hudson,* 468 U.S. at 533; *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988). In the state of New York, such a remedy exists in § 9 of the New York Court of Claims Act. *See Gadson v. Goord,* 1997 WL 714878, at *7 (S.D.N.Y. November 17, 1997) (dismissing inmate's claim in § 1983

action for deprivation of legal documents and medical records). Leitzsey's deprivation of property claim is not properly before this Court and must be dismissed.

## V. The Claim against Defendant Patricia Priestley

Leitzsey's complaint alleges that defendant Patricia Priestley, an Inmate Records Coordinator, denied his requests for copies of the confiscated documents, thereby preventing him from preparing an adequate argument on appeal from the hearing officer's decision to defendant Superintendent Kelly. Leitzsey also claims that defendant Priestley violated his rights under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendants contend that Leitzsey has failed to allege conduct on this defendant's part that would give rise to a violation of the Constitution or federal law.

■ Leitzsey's claims against defendant Priestley are dismissed. First, he has failed to allege a constitutional violation by this defendant. The record before me indicates that defendant Priestley denied Leitzsey access to a copy of the BKKN manifesto because it had been deemed contraband and he was not permitted to have the document. (Exh. to Pl.'s Compl.). Leitzsey was not, however, deprived of access to the hearing tapes from his Tier II hearing, as indicated in a memorandum from defendant Priestley, in which she outlined the rules governing release of hearing tapes to inmates.

Moreover, it does not appear that Leitzsey's appeal was affected by his inability to access the contraband documents, because the Superintendent's decision was based upon a review of the hearing records, which contained numerous quotations from and references to the documents at issue. Even assuming that Leitzsey did suffer some procedural defect because of his lack of access to the documents, he had a constitutionally adequate post-deprivation remedy available to

him through an Article 78 proceeding in state court. *Campo v. NYC Employees' Retirement System*, 843 F.2d 96, 102 (2d Cir.1988), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988).

■ Additionally, Leitzsey's FOIA claim against defendant Priestley has no merit, because the statute does not apply to individuals. The FOIA applies only to federal agencies. 5 U.S.C. § 551(1); *see also Mamarella v. County of Westchester*, 898 F.Supp. 236, 237 (S.D.N.Y.1995). The statute does not create a cause of action against individuals. *Mamarella*, 898 F.Supp. at 238. Leitzsey's FOIA claim is therefore dismissed.[3]

## CONCLUSION

For all of the above reasons, defendants' motion for summary judgment (Docket # 23) is granted. The complaint is dismissed in its entirety.

IT IS SO ORDERED.

---

**3.** The State contends that the claims against defendants Priestley, Urban, Dixon, and Giambruno must be dismissed because these defendants are entitled to qualified immunity. The State also contends that the claims against defendants Coombe and Kelly must be dismissed for lack of personal involvement of these defendants.

There is no need to address the qualified immunity and personal involvement arguments raised by defendants since I have determined that the complaint must be dismissed on the merits.