James A. HARNAGE, Plaintiff,

v.

BRIGHTHAUPT, et al., Defendants.

Civil No. 3:12cv1521(AWT)

United States District Court, D. Connecticut.

Signed March 1, 2016

James A. Harnage, Suffield, CT, pro se.

Robert S. Dearington, Matthew B. Beizer, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

Alvin W. Thompson, United States District Judge

The plaintiff, James Harnage ("Harnage"), who is incarcerated within Connecticut's correctional system, brings this civil rights action pro se pursuant to 28 U.S.C. § 1983. Because of the number of claims and defendants in this action, the claims have been separated into three groups. The claims at issue in the instant motion are the remaining claims in Counts One, Three, and Five of the plaintiff's Complaint (Doc. No. 112). [1] Harnage alleges in these three counts that defendants,

---

1. On February 12, 2014, the court granted the defendants' Motion to Dismiss as to some of the claims in these counts. See Ruling on Motion to Dismiss in Part (Doc. No. 42).

who are current or former officials of the Connecticut Department of Correction ("DOC"), have violated his constitutional rights by retaliation, denial of his right to petition the government to redress grievances, and denial of substantive and procedural due process.

The defendants have moved for summary judgment on the remaining claims in Counts One, Three, and Five. The remaining defendants in those claims are, in Count One, Jon Brighthaupt ("Brighthaupt"), Lauren Powers ("Powers"), Michael Davis ("Davis"), and Jason Hogan ("Hogan"); in Count Three, Brett Mollin ("Mollin"), Christopher Johnson ("Johnson"), and Caesar Faraci ("Faraci"); and in Count Five, Brighthaupt. For the reasons set forth below, the defendants' motion is being granted.

## I. FACTUAL BACKGROUND [2]

Harnage was an inmate at Cheshire Correctional Institution ("Cheshire CI") during the time of the events at issue, which occurred between September 2011 and January 2012.

While at Cheshire CI, Harnage filed numerous grievances regarding prison conditions and the actions of various staff members. On September 10, 2011, the plaintiff filed grievances against defendants Mollin and Santopietro because they would not let him exchange an allegedly uncooked burger he received at lunch.

### Count One

Defendant Hogan was the intelligence officer at Cheshire CI, where his duties included examining outgoing mail to ensure that inmates were not violating DOC's rules regarding inmate correspondence. In performing this duty, Hogan

looked through the mail for irregularities and would investigate illegal activity.

On September 20, 2011, Hogan examined Harnage's mail. At that time, Harnage was on telephone and mail review. Hogan concluded that Harnage was attempting to circumvent the mail system by placing multiple letters in one envelope, which was addressed to "Mom Cavalier," with instructions to forward the additional letters to recipients whose names were not listed on the envelope. This was against the rules set forth in the Inmate Handbook. Based on this finding, Hogan wrote an incident report and then issued a disciplinary report because the plaintiff's actions violated the Inmate Handbook rule and thus constituted an unauthorized use of the mail system.

The plaintiff denies writing the letters at issue. He admits that the envelope containing the three letters had his name, return address, and inmate number on it, but he denies placing that information on the envelope. He states that another inmate had written the correspondence and used Harnage's name and inmate number in order to avoid mail costs. He alleges that defendant Hogan could have easily figured out that Harnage was not the author of the letters by comparing the handwriting or looking up Harnage's mother's name and address in the DOC system. He asserts that the Inmate Handbook rule given by the defendants as the basis for the disciplinary report does not provide adequate notice of what is prohibited.

### Count Three

Defendant Faraci was the property officer at Cheshire CI from 2008 to 2012. When inmates were transferred to the restrictive housing unit ("RHU"), their prop-

**2.** The facts are taken from the defendants' Local Rule 56(a)1 Statement (Doc. No. 112-2) and attached exhibits and Harnage's Local Rule 56(a)2 Statement (Doc. No. 136-2) and affidavit (Doc. No. 136-4) with attached exhibits.

erty was stored in the property room. When Faraci received an inmate's property, he would search and inventory it. On October 3, 2011, while Harnage was in RHU, Faraci searched and inventoried Harnage's property. He discovered a sharpened piece of metal, multiple carbon papers, a bottle of Wite-Out, altered headphones, and a Sony radio. Faraci issued a disciplinary report for the sharpened piece of metal, which was considered Contraband Class A because it was a dangerous instrument. At the same time, Faraci issued a second disciplinary report for Harnage's possession of Contraband Class B, based on other items found during Faraci's search. The second report covered some items that the plaintiff admits were contraband, along with other items that he contends were not contraband.

Defendant Mollin was a Lieutenant at Cheshire CI CI at the time, and as part of his duties, he reviewed and signed off on disciplinary reports for Contraband Class A and Class B. He denies having any other involvement in the search of Harnage's property.

Harnage alleges that the search was initiated and supervised by Mollin. The plaintiff contends that Mollin planted a sewing needle (the "sharpened piece of metal") in his property and that Faraci was aware that the needle had been planted.

Defendant Johnson was the disciplinary investigator at Cheshire CI. As part of his duties, he reviewed disciplinary reports and met with inmates who received them. If the inmate pled guilty, Johnson would impose appropriate sanctions. If the inmate pled not guilty, Johnson would conduct an investigation, and the inmate would receive a hearing on the report. Under DOC policy, if an inmate pleads guilty, he receives lesser sanctions than if he is found guilty by a hearing officer.

Harnage pled guilty to the Contraband Class B disciplinary report.

Harnage alleges that Johnson told the plaintiff that if he did not plead guilty to possession of all of the items listed as contraband, an individual disciplinary report would be issued for each item. He alleges that while he pled guilty, the plea was not voluntary.

Count Five

Defendant Brighthaupt was the Warden at Cheshire CI. On July 26, 2011, he issued a notice to the inmates at the facility regarding a change to the grievance procedure. The notice stated that inmates must use an informal resolution process before filing a grievance. It categorized the types of grievance issues and identified the staff members who would handle the different types of grievance issues.

As Warden, Brighthaupt's duties included reviewing inmate grievances. Administrative Directive 9.6 explains DOC's grievance procedure. It provides, inter alia, that "when an inmate files more than seven (7) grievances in any 60 day calendar period," the "inmate may be deemed to be abusing the grievance procedure." Between November 25, 2011 and January 27, 2012, Harnage filed nine separate grievances. Administrative Directive 9.6 provides that "[a] determination of abuse shall be made by the Unit Administrator and shall stipulate the restriction(s) imposed." Pursuant to DOC policy, Brighthaupt determined that Harnage was abusing the grievance process, and on January 30, 2016, he placed the plaintiff on grievance restriction.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant

judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

■ Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir.1990).

■ When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir.2007) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

■ Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor

of the nonmoving party. See Anderson, 477 U.S. at 248, 251, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Due Process

■■■■ In Counts One and Three, Harnage asserts claims for violations of his due process rights under the Fourteenth Amendment. Substantive due process protects individuals against government action that is arbitrary, see Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), or oppressive in a constitutional sense. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Procedural due process ensures that the government utilizes fair procedures. See Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). To invoke either protection, Harnage must establish a violation of his right to life, liberty or property. See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). Here, the right at issue is the right to liberty.

### 1. Count One

■■■■ In Count One, Harnage claims that defendants Brighthaupt, Powers, Davis, and Hogan violated his substantive due process rights because he did not have notice that inmates are prohibited from placing letters to multiple people into one envelope. Government conduct violates a plaintiff's Fourteenth Amendment right to substantive due process only where it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Constitutional violations do not, in and of themselves, 'shock the conscience' for the purposes of substantive due process." Roman v. Velleca, No. 3:11CV1867 VLB, 2012 WL 4445475, at *10 (D.Conn. Sept. 25, 2012).

As the court explained in Roman, "where factual allegations shock the conscience only insofar as they constitute specific constitutional violations, plaintiffs may not seek redress under substantive due process." Id. Here, Harnage has alleged a First Amendment retaliation claim based on the same action raised in the due process claim, i.e. Hogan's issuance of a disciplinary report for violation of rules for outgoing mail.

> Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing" such a claim.

Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal citation and quotation marks omitted). Because the First Amendment provides protection against the type of behavior alleged by Harnage, his substantive due process claim is not cognizable.

■■■■ Moreover, Harnage's substantive due process claim also fails on the merits. "[C]ourts have recognized prisoners' substantive due process claims that allege that prison rules failed to provide adequate notice of prohibited conduct." Leitzsey v. Coombe, 998 F.Supp. 282, 289 (W.D.N.Y. 1998). "The underlying rationale for such holdings is that inmates must be free to avoid prohibited conduct, and prison regulations must therefore place them on notice of the actions that could subject them to discipline." Id.

In Chatin v. Coombe, the court's approach to determining whether the statute at issue was unconstitutionally vague was as follows:

> [A] court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then con-

sider whether the law provides explicit standards for those who apply it.

186 F.3d 82, 87 (2d Cir.1999) (internal citation omitted). The same approach should be taken with respect to the prison regulations at issue here.

As to the first prong, Harnage did have notice of the rules prohibiting his conduct. The defendants state, and Harnage does not dispute, that the Inmate Handbook is issued to inmates when they arrive, and that Harnage received a copy of it. The Inmate Handbook provides inmates with rules for using the mail system, including a requirement that inmates "must address the envelope with the complete legible address of the party with whom [they] are corresponding." This rule prohibits inmates from mailing letters to one recipient and having that recipient forward additional letters to other individuals who are not identified on the envelope. The Inmate Handbook states that inmates must follow this rule because "it is important that DOC knows that the correspondence is going to the intended recipient addressed on the envelope" (emphasis added). This rule is sufficiently clear as to give notice of what is prohibited. See Klimas v. Lantz, No. 3:08CV694 WWE, 2012 WL 3611018, at *7 (D.Conn. Aug. 21, 2012) (granting summary judgment where Administrative Directive at issue "gives reasonable notice of the proscribed speech by enumerating the specific circumstances where correspondence will be disapproved.").

Further, the Inmate Handbook and Administrative Directive both state that improper use of the mail system is an offense that may result in discipline. (See Local Rule 56(a)(1), Doc. No. 112-2, at ¶¶ 19, 26.) In his opposition, Harnage states that the rules regarding outgoing general correspondence were "non-existent" (see Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Doc. No. 136, at 7) but his admissions in his Local Rule 56(a)(2) statement bely that

assertion, and he offers no evidence to support it. (See Local Rule 56(a)(2), Doc. No. 136-2, at ¶¶ 19, 26.)

As to the second prong, DOC had sufficiently explicit standards for the staff who were applying the rules regarding mail. DOC's procedures give the inmate the opportunity to present evidence at a hearing prior to any ruling on the disciplinary report, and the inmate can appeal a guilty finding to the district administrator's office. "[T]he [Administrative] Directive limits any unfettered discretion on the part of prison staff by providing for procedures for review of the decision to reject correspondence by the Unit Administrator." Klimas v. Lantz, No. 3:08CV694 WWE, 2012 WL 3611018, at *7 (D.Conn. Aug. 21, 2012). Here, as in Klimas, the procedures in place limit the defendants' discretion in applying the rules.

Accordingly, plaintiff has not created a genuine issue as to whether the regulation is unconstitutionally vague, and summary judgment is being granted in favor of the defendants on the due process claim in Count One.

### 2. Count Three

In Count Three, Harnage alleges that defendant Johnson violated his due process rights in that (a) Johnson told the plaintiff that if he did not plead guilty to possession of all of the listed items as Class B contraband, an individual disciplinary report would be issued for each item; and (b) Harnage did not receive due process at the disciplinary hearing for the Class A contraband.

To prevail on a claim for violation of procedural due process, Harnage must establish "both that the confinement or restraint creates an 'atypical and significant hardship' under Sandin, and that the state has granted its inmates, by regulation or by statute, a protected liberty in-

terest in remaining free from that confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996) (citing Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

■ "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). However, a state may create a protectable liberty interest where, for example, the state enacts statutes or promulgates prison regulations that entitle prisoners to certain procedural protections. See Wolff v. McDonnell, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.").

■ However, not all state-created liberty interests in freedom from restraint receive the protection of the Due Process Clause. In particular, liberty interests created by prison regulations

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 484, 115 S.Ct. 2293. Thus, in order for Harnage to properly present a due process claim, he must not only establish the existence of a liberty interest in being free from the restrictions attendant to restrictive housing, but also demonstrate that the restrictions in question impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Frazier, 81 F.3d at 317.

Harnage challenges the two disciplinary reports for possession of contraband. He received sanctions of 5 days in punitive segregation, 5 days loss of Risk Reduction Earned Credits ("RREC"), and 15 days confinement to quarters on the Contraband Class B disciplinary report; and 15 days in punitive segregation, 10 days loss of RREC, 30 days loss of recreation, and 90 days loss of telephone privileges on the Contraband Class A disciplinary report.

Inmates should reasonably anticipate confinement in segregation. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir.1993); see also Frazier, 81 F.3d at 317–18 (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days' confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by a prisoner).

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug.25, 1997) (cit-

ing cases). See also Nicholson v. Murphy, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10–*11 (D.Conn. Sept. 17, 2003) (holding that confinement in segregation for 30 days or less is not an atypical and significant hardship); Fine v. Gallow, No. 3:97cv497(SRU), 2000 WL 565232, at *9 (D.Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of 5 days confinement in punitive segregation and 15 days confined to quarters, and 7 days confinement in punitive segregation, 15 days confined to quarters and 30 days loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2:92cv936 (PCD) (D.Conn. Oct. 4, 1995) (holding that 30-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

 Under the challenged sanctions, Harnage served 20 days in punitive segregation. Harnage alleges no facts suggesting that the sanctions he received were qualitatively different from ordinary prison life. Thus, the court concludes that Harnage's 20-day confinement in segregation is not an atypical and significant hardship and does not give rise to a liberty interest under Sandin. In addition, Harnage has no constitutional right to telephone use, to communal meals, or to be free from cell restrictions. See, e.g., Frazier, 81 F.3d at 317–18 (holding that 30 day loss of recreation, commissary privileges, and telephone use did not state a cognizable claim for denial of due process). Thus, these sanctions do not implicate a protected liberty interest and do not support a claim for denial of due process.

Therefore, the defendants' motion for summary judgment is also being granted with respect to the claims of denial of due process in Count Three.

### B. Retaliation

Harnage asserts multiple claims of retaliation by various defendants in Counts One, Three, and Five.

 In a § 1983 retaliation claim, "[t]he plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (citing Mount Healthy Sch. Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

> If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff even in the absence of the protected conduct. Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.

Graham, 89 F.3d at 79 (internal citation and quotation marks omitted). A "finding of sufficient permissible reasons to justify state action is readily drawn in the context of prison administration," id. for two reasons. First, because of the "ease with which claims of retaliation may be fabricated," the court "examines prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). Second, courts "have been cautioned to recognize that prison officials have broad administrative authority." Graham, 89 F.3d at 79.

 Harnage's claims cannot survive summary judgment under the Mount Healthy test if he does not meet the burden of demonstrating three genuine issues of material fact: "(1) that the speech or conduct at issue was protected, (2) that the defendant[s] took adverse action against

the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Espinal v. Goord</u>, 558 F.3d 119, 128 (2d Cir.2009).

### 1. <u>Improper Use of Mail</u>

In Count One, Harnage alleges that defendant Hogan issued a disciplinary report against him in retaliation for his filing of grievances against other officers. The defendants contend that defendant Hogan's action was for a proper and legitimate reason, namely, that Harnage had violated DOC rules for outgoing mail.

■■■ Harnage meets his burden with respect to showing that there is constitutionally protected conduct. His filing of a grievance is constitutionally protected. <u>See</u> <u>Graham</u>, 89 F.3d at 80 ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.").

The second requirement is that Harnage demonstrate that he suffered an adverse action. "[I]n the prison context we have previously defined 'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir.2004) (quoting <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir.2003)). The defendants do not dispute that the disciplinary report constituted adverse action.

■■■ However, Harnage has failed create a genuine issue of material fact with respect to the third requirement, causation. "Prisoner plaintiffs may rely on circumstantial evidence to prove their retaliation claims, such as temporal proximity of events, but in doing so, the plaintiff also must usually provide some non-conclusory evidence that raises an inference of 'retal-

iatory animus' in order to proceed to trial." <u>Parks v. Blanchette</u>, No. 3:09–CV–604 (VAB), 144 F.Supp.3d 282, 330–31, 2015 WL 6755208, at *34 (D.Conn. Nov. 4, 2015). Furthermore, "if the defendant-official has made a properly supported motion [for summary judgment], the plaintiff ... must identify <u>affirmative evidence</u> from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." <u>Crawford–El v. Britton</u>, 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (emphasis added).

Harnage argues that the temporal relationship between his filing of the grievance and the issuance of the disciplinary report about 10 days later establishes a causal connection. The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." <u>Gorman–Bakos v. Cornell Co-op Extension of Schenectady Cty.</u>, 252 F.3d 545, 554 (2d Cir.2001). "This has allowed our Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir.2009).

However, although the Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation, [the court has] consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." <u>Faulk v. Fisher</u>, 545 Fed.Appx. 56, 58 (2d Cir.2013) (citing <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir.2003)). <u>See also</u> <u>Ayers v. Stewart</u>, 101 F.3d 687, at *1 (2d Cir.1996) ("[Plaintiff's] reliance on circumstantial evidence of retaliation—namely, the proximity of the disciplinary action to

his complaint where no misbehavior reports were previously filed against him—does not suffice to defeat summary judgment."); Ziemba v. Thomas, 390 F.Supp.2d 136, 157 (D.Conn.2005) ("Temporal proximity alone is not sufficient for the plaintiff's claim to survive summary judgment."); Bryant v. Goord, No. 99 CIV. 9442, 2002 WL 553556, at *2 (S.D.N.Y. Apr. 12, 2002) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment").

Harnage has not provided any plausible reason why defendant Hogan would file an allegedly false disciplinary report because Harnage had filed a grievance against two other officers. Compare Espinal v. Goord, 558 F.3d 119, 129–30 (2d Cir.2009) (denying motion for summary judgment where inmate alleged retaliatory beating by two officers, one of whom was a defendant in inmate's prior lawsuit); Colon v. Coughlin, 58 F.3d 865, 872–73 (2d Cir.1995) (denying summary judgment where prison official who authorized contraband search admitted to plaintiff that plaintiff had been "framed" because of a lawsuit he had filed). Without affirmative evidence that the individuals engaging in the allegedly retaliatory acts did so in retaliation for the plaintiff's exercise of constitutionally protected activity, such a claim is speculative at best.

Harnage also alleges that the disciplinary report was based on false information, because he did not write the three letters found in the envelope. As evidence, he states that the handwriting on the letters does not match his handwriting; that he does not know anyone in Florida, where the letter was being sent; and that the letters were signed by "Tommy." Harnage also states that he later learned that another inmate had used Harnage's name

and inmate number in order to avoid paying his own mail costs.

Such evidence in support of a retaliation claim may suffice to defeat summary judgment when, for instance, the assertions are "supported by the fact that essentially all relevant adverse actions by DOCS officials were subsequently found to have been unjustified." Bennett v. Goord, 343 F.3d 133, 138 (2d Cir.2003). In Bennett, the relevant adverse actions against the plaintiff were all reversed on administrative appeal. Here, by contrast, the court has only Harnage's assertions that he was not the author of the correspondence and that Hogan should have known that he was not. At most, this evidence supports an inference that the defendant acted negligently in his investigation, not that he acted with retaliatory intent.

"With regard to false misbehavior reports, the type[s] of evidence required to establish a causal connection between the plaintiff's protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing and statements from the defendants regarding their motives." Riddick v. Arnone, No. 3:11CV631 SRU, 2012 WL 2716355, at *6 (D.Conn. July 9, 2012). Here, Harnage has shown temporal proximity but has not provided any other evidence of a causal connection. See also Faulk v. Fisher, 545 Fed. Appx. 56, 59 (2d Cir.2013) (granting summary judgment on retaliation claim where plaintiff provided no evidence that the named defendants were motivated by plaintiff's grievance against other officers).

Furthermore, even if Harnage had met his burden under the Mount Healthy test, summary judgment would still be appropriate if the defendants then met their burden of showing that Harnage would have been disciplined even in the absence of the protected conduct. See Gra-

ham, 89 F.3d at 81. "Once the burden shifts to the defendants, [plaintiff's] presentation creates a triable issue of fact unless the defendants proffer an alternative basis for disciplining [plaintiff] that would apply to him even if his version of events were true." Id. "[T]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994). Here, the defendants have asserted a legitimate, non-retaliatory reason for the disciplinary action, and have provided affidavits and other documentary evidence (the envelope bearing Harnage's name and inmate number, and the three letters that were contained in the envelope) that the disciplinary report was substantiated.

Accordingly, the court is granting summary judgment in favor of defendant Hogan as to this claim.

### 2. Contraband

In Count Three, Harnage asserts that defendants Faraci and Mollin retaliated against Harnage for filing grievances by orchestrating the discovery of contraband in Harnage's property, and filing a subsequent disciplinary report based on the contraband. (See Compl. at ¶¶ 60-62.)

Harnage fails to go beyond this conclusory assertion and provide evidentiary support for the allegation that Mollin planted a needle in Harnage's property and that Faraci was aware of the alleged "planting" of the needle. Harnage claims the following as circumstantial evidence in support of his allegation: (a) he did not own a sewing needle, and (b) he admitted ownership of other items found in his property but did not admit owning the needle. "At the summary judgment stage,

plaintiff must provide more than his subjective belief that he was the subject of retaliation." Pelletier v. Armstrong, No. CIV 399CV1559 HBF, 2007 WL 685181, at *13 (D.Conn. Mar. 2, 2007). Harnage's bald assertions are not enough to create a genuine issue of material fact, and the court therefore concludes that the defendants are entitled to summary judgment on this claim.

### 3. Grievance Restriction

In Count Five, Harnage alleges that defendant Brighthaupt retaliated against him (a) by issuing a memo requiring inmates to seek informal resolution with every staff member in the chain of command before filing a grievance, and (b) by placing him on a grievance restriction.

As to the claim regarding the memo concerning inmate administrative remedies, this notice was issued to the entire prison population, not just to the plaintiff. Harnage has presented no evidence that the notice was issued to the entire facility for the purpose of retaliating against him. Thus, it was not an adverse action against Harnage, and summary judgment is being granted to defendant Brighthaupt as to this claim.

With respect to Harnage's placement on grievance restriction, on January 30, 2012, Brighthaupt suspended Harnage's ability to file grievances for a period of six months, pursuant to DOC Administrative Directive. 9.6. Administrative Directive 9.6 provides that an inmate who files more than seven grievances in a 60-day period may be determined to be abusing the inmate grievance procedure. Brighthaupt determined that Harnage had abused the grievance procedure because Harnage had filed nine grievances during a 60-day period. Harnage does not dispute that he filed more than seven grievances in a 60-day period. "Accordingly, Defendants

followed DOC policy as it is written. Because they have provided a legitimate and non-retaliatory reason for their action, Defendants have met their burden under the Mount Healthy test." Parks v. Blanchette, No. 3:09–CV–604 (VAB), 144 F.Supp.3d 282, 336–37, 2015 WL 6755208, at *39 (D.Conn. Nov. 4, 2015). See also Hunnicutt v. Kitt, No. 3:10–CV–857 CSH, 2012 WL 1247268, at *8 (D.Conn. Apr. 13, 2012).

Harnage provides no evidence to support his assertion that his placement on grievance restriction was the result of retaliation rather than a consequence of the fact that he had filed what DOC policy deemed to be an excessive number of grievances in a 60-day period. Thus, Harnage cannot establish a retaliation claim under Mt. Healthy, because he has failed to provide evidence of a retaliatory motive for the adverse action.

### C. Right to Petition Government for Redress of Grievances

■ In Counts One and Three, Harnage claims that retaliatory conduct by the defendants, in the form of issuing a disciplinary report against him because he had filed grievances, orchestrating the discovery of contraband in his property, and placing him on a grievance restriction, constituted a denial of Harnage's right to petition the government for redress of grievances.

> [T]he right of petition applies with equal force to a person's right to seek redress from all branches of government. See California Motor Transport, 404 U.S. at 510, 92 S.Ct. at 611–12; Haymes v. Montanye, 547 F.2d 188, 191 (2d Cir.1976). In the prison context, we have held that inmates must be " 'permit[ted] free and uninhibited access ... to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers.' " Id.

Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988). "The right to petition is substantive rather than procedural and therefore 'cannot be obstructed, regardless of the procedural means applied.' " Id. (quoting Morello v. James, 810 F.2d 344, 346 (2d Cir.1987)).

However, for the reasons set forth above, the court has found that the plaintiff has failed, as to the claimed instances of retaliation, to create a genuine issue of material fact as to whether he was retaliated against, and the defendants are entitled to summary judgment. Therefore, the defendants' motion for summary judgment is also being granted as to these right to petition claims.

### IV. CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 112) is hereby GRANTED. Summary judgment shall enter in favor of the defendants with respect to all of the remaining claims in Counts One, Three, and Five.

It is so ordered.